UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARTY K. MURPHY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CASE NO. 2:14-CV-2149-SLB |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Marty K. Murphy brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his applications for a period of disability, disability insurance benefits [DIB], and supplemental security income [SSI]. After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Mr. Murphy filed an application for a period of disability and DIB and an application for SSI on November 17, 2010, alleging a disability onset date of October 14, 2010. (*See* doc. 8-3 at R.21; doc. 8-7 at R.125-33.)[1] The applications were initially denied on March 23, 2011. (Doc. 8-5 at R.64-66.) Thereafter, Mr. Murphy requested a hearing before an

---

[1]Reference to a document number, ("Doc. __"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.__").

Administrative Law Judge [ALJ], which was held on May 14, 2012.  (Doc. 8-5 at 70; *see* doc. 8-3 at 38.)  Following the hearing, the ALJ found that Mr. Murphy was not disabled; therefore, he denied Mr. Murphy's applications for a period of disability, DIB, and SSI on November 29, 2012.  (Doc. 8-3 at R.31-32.)

Mr. Murphy requested review of the ALJ's decision by the Appeals Council.  (*See id*. at R.13.)  The Appeals Council denied the request for review, stating that it had "found no reason under [its] rules to review the [ALJ's] decision." (*Id*. at 1.)  Therefore, "the [ALJ's] decision is the final decision of the Commissioner of Social Security in [Mr. Murphy's] case." (*Id*.)

Mr. Murphy filed an appeal in this court on November 5, 2014.  (Doc. 1.)

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *see Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB and SSI benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A).

The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the

---

[2]The regulations state:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (2012).[3]

The ALJ found that Mr. Murphy had not engaged in substantial gainful activity since October 14, 2010, the alleged onset date. (Doc. 8-3 at R.23.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a).  A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923.  A claimant has the burden to show that he has a severe impairment or combination of impairments.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Murphy had "the following severe impairment: status post mandibular squamous cell carcinoma." (Doc. 8-3 at R.23.) He also found that Mr. Murphy had a "medically[-]determinable mental impairment of substance abuse – in remission[, which] does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[,] and is[,] therefore[,] nonsevere." (*Id*. at R.24.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets or is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].  If the claimant's impairment meets or equals an

6

impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Murphy did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Doc. 8-3 at R.25.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment or combination of impairments does not meet or equal the criteria of a Listing, the claimant must prove that his impairment or combination of impairments prevents him from performing his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it. 20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(e); 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that

the impairment or combination or impairments prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

Based on his "consideration of the entire record," the ALJ found that Mr. Murphy could perform a limited range of light work; he found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[,][4] except the claimant is precluded from . . . climbing ladders, ropes or scaffolds, but can occasionally climb steps; the claimant can occasionally stoop, kneel, crouch and crawl, and occasionally operate foot and leg controls; the claimant must have no exposure to unprotected heights, dangerous and moving machinery, extreme temperatures or humidity.

(Doc. 8-3 at R.25 [footnote added].) Based on the RFC, the ALJ found that Mr. Murphy could not perform his past relevant work as a tree surgeon helper, a construction laborer, a groundskeeper, or a moving van helper. (*Id*. at R.30.)

---

[4]The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

### 5. Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1); 20 C.F.R. § 416.920(c)(1). The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work, we will use the same [RFC] assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your [RFC] and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f). If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he is not capable of performing such other work.

The ALJ found that Mr. Murphy, who was born in 1970, was a "younger individual" on the alleged onset date and that he had a limited education and could communicate in English. (Doc. 8-3 at R.30.) The ALJ consulted a vocational expert [VE]; the VE testified that an individual with Mr. Murphy's RFC and vocational factors could perform "jobs that exist in significant numbers in the national economy," including linen supply worker,

9

shipping and receiving clerk, and watch and clock assembly inspector. (*Id*. at R.30-31, R.57-58.) Based on this testimony, the ALJ found Mr. Murphy could make as successful adjustment to perform other work. (*Id*. at R.31.)

Therefore, the ALJ found that Mr. Murphy had not been under a disability at any time from November 17, 2010, the date the applications were filed, through November 29, 2012, the date of the ALJ's decision. (*Id*. at R.32.)

## B. MR. MURPHY'S APPEAL

Mr. Murphy raises two issues on appeal: (1) "the ALJ erred in failing to find a period of disability of at least twelve months," (doc. 11 at 5), and (2) "the ALJ failed to develop the record," (*id*. at 8). For the reasons set forth below, the court finds that the Commissioner's decision is due to be affirmed.

### 1. Closed Period of Disability

Mr. Murphy contends, "The medical evidence of record reasonably supports a finding that a threshold period of disability in excess of twelve months was established." (*Id*. at 5.) He argues that he became disabled on October 14, 2010, "with the diagnosis of bone cancer in the left jaw," and "[e]ven if claimant had arguably improved sufficiently to restore the ability to work by April 2012, there would still have been at least a twelve month period from October 2010 to at least October 2011 when claimant was still taking narcotic pain medication and not capable of sustained work." (*Id*. at 4-5, 8.)

> To qualify for a period of disability, disability insurance benefits, or supplemental security income, a claimant must be unable "to engage in any

> substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

*McClurkin v. Soc. Sec. Admin.*, 625 Fed. Appx. 960, 962 (11th Cir. 2015)(quoting 42 U.S.C. § 423(d)). "A claimant may request benefits for a finite period of disability, even if [he] is later able to work. In such 'closed period' cases, 'the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'" *Mitchell v. Comm'r of Soc. Sec.*, 393 Fed. Appx. 651, 652 (11th Cir. 2010)(quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir.1987)).

The court notes that Mr. Murphy contends his period of disability begins on the date he was diagnosed with cancer. The court disagrees. "A diagnosis alone is an insufficient basis for a finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002)(citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir.1986)). Nevertheless, Mr. Murphy testified that he quit work when he learned he had cancer. (Doc. 8-3 at R.44-45, R.48.) He also testified that he was unable to work due to pain in his jaw and both legs and balance problems and nerve problems in the leg from which the bone was removed to reconstruct his jaw. (*Id*. at 51.) Nothing in the record indicates that these alleged limitations predated his surgery on February 1, 2011.

Regarding Mr. Murphy's medical records, the ALJ found:

The record indicates that on September 14, 2010, the claimant received a preoperative diagnosis of a mandibular lesion and underwent a biopsy. [(*See* doc. 8-8 at R.175, R.187.)]  On October 25, 2010, the claimant submitted to an x-ray examination of his chest, which revealed both a previous mass in the neck and a granuloma in the mid-lateral area of the left lung. [(*Id*. at R.172.)] A CT scan of the claimant's neck indicated a likely sarcoma, possible inflammatory disease and the presence of a "very small cyst" in the right lobe of his thyroid gland (Exhibit 1F). [(*Id*. at R.173-74.)]  The claimant was diagnosed with an osteopenic sarcoma of the left mandible on November 9, 2010, by the Cooper Green Mercy Hospital (Exhibit 1F). [(*Id*. at R.176, R.180.)]

The claimant underwent a nuclear medicine bone scan on November 18, 2010, which revealed uptakes in the soft tissues of the left side of the neck and in the right upper quadrant (Exhibit 1F). [(*Id*. at R.171.)]  On November 24, 2010, an x-ray examination of the claimant's chest indicated cardiomegaly (Exhibit 3F). [(*Id*. at R.202.)]

On December 6, 2010, the claimant presented to the UAB [University of Alabama at Birmingham] Kirklin Clinic, for a follow-up due to his left mandibular squamous cell carcinoma diagnosis. [(Doc. 8-10 at R. 397.)] During this examination, the claimant reported experiencing no acute distress and rated his pain at the time as a "zero" on a scale of "one" to "ten", with "ten" representing the greatest pain ever felt. [(*Id*.)]  Aside from some swelling in the mandibular area, the claimant produced a "relatively unremarkable" examination with his cranial nerves being intact. [(*Id*.)] Medical records indicate that on January 24, 2011, the claimant presented for a follow-up visit at the Kirklin Clinic, having been diagnosed with squamous cell carcinoma of the left mandible. [(*Id*. at R.405.)]  The claimant presented in no acute distress, but did display a firmness and irregularity in the left submandibular gland (Exhibit 17F). [(*Id*.)]

An MRI of the claimant's brain and brain stem on January 31, 2011, indicated a negative brain examination, left frontal calvarial susceptibility artifacts, a slightly increased signal and cortical destruction in the anteroinferior left mandibular angle with associated soft tissue mass inferomedially (Exhibit 16F). [(Doc. 8-9 at R.321.)

On February 1, 2011, the claimant underwent a right osteocutaneous fibular free flap and reconstruction of the left hemimandible and was diagnosed with squamous cell carcinoma of the left mandible (Exhibits 8F, 9F). [(Doc. 8-8 at R.259, R.265.)]

Two days later, on February 3, 2011, the claimant received a postoperative diagnosis of osteosarcoma of the left mandible, status post mandibulectomy with fibular free flap reconstruction, and underwent a neck exploration and evacuation of a hematoma (Exhibit 18F). [(Doc. 8-11 at R.413.)]

UAB medical records, dated February 5, 2011, indicate that the claimant presented in no acute distress during his appointment and was healing well at the fibular donor site (Exhibit 18F). [(*Id*. at R.450.)] On February 8, 2011, the claimant presented having diarrhea and abdominal pain. [(Doc. 8-17 at R.803.)] The claimant was diagnosed with abdominal pain, vomiting and diarrhea. [(*Id*. at R.805.)] A CT scan of the claimant's abdomen and pelvis revealed right middle lobe pneumonia. [(*Id*.)] As such, the claimant's diagnoses were updated to hospital-acquired pneumonia and stage four squamous cell carcinoma, resulting in mandibular amputation (Exhibit 21). [(*Id*.)]

On February 9, 2011, the claimant reported to the [UAB] department of surgery and was admitted due to abdominal pain and vomiting. [(Doc. 8-8 at R.237.)] A CT scan during this admission revealed "ill-defined sclerotic lesions within the T10 vertebral body," but otherwise revealed no abdominal processes to explain the claimant's symptoms. [(*Id*. at R.237, R.246.)] By February 12, 2011, the third day of his admission, the claimant no longer displayed discomfort and was discharged to his home, although the reason for the pain was never explicitly indicated (Exhibit 7F). [(*Id*. at 238.)]

The claimant reported again to the Kirklin Clinic on March 4, 2011, for a follow-up visit. [(Doc. 8-10 at R.404.)] The claimant was complaining of pain at his fibular donor site, "which has worsened, now causing him trouble with weight-bearing." [(*Id*.)] Despite this pain, the claimant presented in no [apparent] distress and was diagnosed as having a healing wound. [(*Id*.)] Moreover, the claimant was prescribed the antibiotic Keflex and the pain medication Lortab (Exhibit 17F). [(*Id*.)]

. . .

> The claimant reported Dr. Withrow's office on July 22, 2011, and presented in no [apparent] distress and "without any complaints," having previously undergone mandibular resection and fibular free flap reconstruction. [(Doc. 8-18 at R.999.)] After the examination, the claimant was diagnosed with "osteosarcoma status post resection with no evidence of disease" (Exhibit 23F). [(*Id.*)]
>
> On March 28, 2012, the claimant indicated during his examination at the Cooper Green Mercy Hospital that he had been experiencing right ankle pain at the donor site, rating the pain as "six" on a pain scale of one to ten. [(Doc. 8-19 at R.1035.)] The attending physician notes that the claimant "[h]as not been on anything for pain," and that regarding the claimant's mandibular surgery, observed that the claimant is able to eat and drink "fine" (Exhibit 27F). [(*Id.*)]
>
> More recently, the claimant presented to Cooper Green Mercy Hospital, on April 23, 2012. [(*Id.* at R.1036.)] During that examination, the claimant's fibular graft site was characterized as "well healed" and the claimant displayed no signs of disease recurrence (Exhibit 23F). [(*Id.*)]
>
> A week later, on April 30, 2012, the claimant underwent a CT scan of his neck. [(*Id.* at R.1037.)] Aside from the discovery of a nonspecific right-sided triangle lymph node, "[t]he rest of the exam is unremarkable" (Exhibit 27F). [(*Id.*)]

(Doc. 8-3 at R.26-28.) Based on his consideration of the medical records, as well as Mr. Murphy's testimony, the ALJ found:

> The undersigned acknowledges that the claimant has continued to experience pain due to his impairment. The records indicate that in September 2010, the claimant discovered a mandibular lesion on his left mandible. [(*See* doc. 8-8 at R.186-87.)] After submitting to diagnostic examinations at the Cooper Green Mercy Hospital, the claimant was diagnosed with osteopenic sarcoma of the left mandible on November 9, 2010 (Exhibit 1F). [(*Id.* at R.176, R.180.)] Further, on February 1, 2011, the claimant underwent a right osteocutaneous fibular free flap and reconstruction of the left mandible (Exhibit 8F). [(Doc. 8-8 at R.259.)]

14

> Nevertheless, while it is reasonable that claimant continued to experience some pain and limitations from this injury, the severity of [his] alleged symptoms and alleged extensiveness of [his] limitations simply are not supported. Non-examining state agency consultant Frederic Ransom, M.D., reviewed the claimant's record as of March 21, 2011, and completed a physical summary, wherein he rated the [claimant's] chondroblastic osteosarcoma of the left mandible as a "durational" non-severe impairment, noting that it can reasonably be expected that the claimant will "have recovered completely [in] 12 months" (Exhibit 12F). [(Doc. 8-8 at R.109.)] The record supports this conclusion. After the claimant underwent his left mandibular reconstruction in February 2011, there is little evidence that this impairment continued to create disabling limitations or pain. On February 5, 2011, the claimant presented to the UAB facility for a follow-up visit. [(Doc. 8-11 at R.450.)] The attending physician observed that the claimant appeared in no acute distress during the visit and was found to be healing well at the fibular donor site (Exhibit 18F). [(*Id.*)] Although the Kirklin Clinic records on March 4, 2011, indicate that the claimant experienced pain at the graft site – the claimant indicated that the pain he felt was causing him trouble with weight-bearing – the attending physician noted that despite his report, the claimant reported in no [apparent] distress and was diagnosed with having a healing wound at the graft donor site (Exhibit 17F). [(Doc. 8-10 at 404.)] Moreover, on March 28, 2012, the claimant presented to the Cooper Green Mercy Hospital, reporting right ankle pain, and rating the pain as a "six" on a ten-point scale. [(Doc. 8-19 at R.1035.)] The attending physician indicated that at the time of the examination, the claimant "has not been on anything for pain" (Exhibit 27). [(*Id.*)] Lastly, there is no evidence that the claimant's sarcoma has led to any secondary cancers diagnoses or come out of remission anywhere in the record. The claimant visited the office of Dr. Withrow on July 22, 2011, and presented in no acute distress and "without any complaints." [(Doc. 8-18 at R.999.)] The claimant was diagnosed with osteosarcoma and being status post mandibular resection "with no evidence of disease." [(*Id.*)] The claimant presented to the Cooper Green Mercy Hospital on April 23, 2012, and was described as having a "well healed-fibular graft site and displaying no sign of disease recurrence (Exhibit 23F). [(Doc. 8-19 at R.1036.)]

(Doc. 8-3 at R.28-29.)

These findings are supported by substantial evidence, which shows that Mr. Murphy's condition improved following surgery. Although he continued to complain of pain and other limitations in the months following his surgery, he has not pointed to evidence that these issues resulted in disabling limitations for a continuous period of 12 months or more.

Therefore, the court finds that the ALJ did not err in failing to find a closed period of disability.

## 2. Duty to Develop the Record

Mr. Murphy contends that the ALJ failed to properly develop the record. (Doc. 11 at 8.) Specifically, he contends that the ALJ had a duty to develop the record by seeking updated medical records from Mr. Murphy for the period of time between the hearing, on May 14, 2012, and the date of the decision, November 29, 2012. (*See id*. ["The ALJ otherwise failed to explain the delay of more than six months in issuing a decision in November 2012 (R.18) following the hearing in May 2012 (R.21), creating a large evidentiary gap at the time of the decision."].) He also contends:

> No RFC was ever generated by the State Agency and the ALJ did not utilize a medical expert (ME). Such development to obtain an MSO [medical source opinion] by this means or by a consultative examination (CE) was called for in light of the State Agency's prior finding that the claimant was disabled at the time of the initial denial,[5] the state of the evidence at the time

---

[5]The State Agency physician did not find that Mr. Murphy was disabled at the time of the initial denial. On December 10, 2010, Gloria L. Sellman, M.D., recommended Mr. Murphy's case "be deferred until after surgical resection is done and we can ascertain whether [he] has any regional or distant [metastases]." (Doc. 8-8 at R.274.) She noted:

> of the hearing, and the long evidentiary gap of over six months thereafter at the time of the ALJ's disposition.

(*Id*. at 9 [footnote added].)

The court notes that Mr. Murphy, who is represented by counsel, has not filed any additional medical records with the court nor did he submit such records to the Appeals Council. Moreover, he does not argue how additional medical records or an additional medical source opinion or consultative examination would have changed the outcome of his case.

> The ALJ has a basic duty to develop a full and fair record. *Brown v. Shalala,* 44 F.3d 931, 934 (11th Cir. 1995) (per curiam). This is an onerous task, as the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)(internal quotation marks omitted). In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole. *Spencer ex rel. Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)(per curiam) (internal quotation marks omitted). Remand for further factual development of the record before the ALJ is appropriate where "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown,* 44 F.3d at 935 (internal quotation marks omitted).

---

> Given this [claimant] has a sarcoma of the mandible, he is likely to meet either listing [13.11, Skeletal system – sarcoma,] or [13.12, Maxilla, orbit, or temporal fossa], but we lack the full assessment of his tumor extent. Should it become [established] that he has regional [lymph nodes] or his tumor is not fully resectable, etc., we can go ahead and list him prior to the completion of his therapy.

(*Id*.) However, as the record shows, Mr. Murphy's tumor was resectable and there was no evidence that the cancer had spread.

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). To show unfairness or clear prejudice sufficient to obtain a remand, the claimant must show "at least . . . that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)(citing *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

Based on the court's review of the entire record in this case, the court finds Mr. Murphy has not demonstrated any unfairness or prejudice arising from the ALJ's failure to obtain additional medical records from May 2012 until November 2012 and/or to obtain an additional medical source opinion. Indeed, the medical records before the ALJ demonstrate that Mr. Murphy's surgery had removed the cancer from his jaw, that the cancer had not spread, that his jaw was successfully reconstructed with a bone from his tibia, and that both surgical sites were healing and had healed properly. The record shows that Mr. Murphy had some pain following the surgery, but the record does not support a finding that the ALJ erred in finding this pain was not so severe as to be disabling. Mr. Murphy has not shown that additional medical evidence would have refuted the record evidence or the ALJ's finding. Therefore, the court finds Mr. Murphy has not shown unfairness and/or prejudice based on his allegation that the ALJ failed to properly develop the record.

The decision of the ALJ will be affirmed.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the Commissioner, denying plaintiff's claim for a period of disability, DIB, and SSI will be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 16th day of March, 2016.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE